**In the Matter of DIETZ ELECTRIC CO., INC., a Wisconsin Corporation, Debtor.**

**Nos. 72-B-1465, 72-B-1464.**

United States District Court, E. D. Wisconsin.

Nov. 17, 1975.

Daniel W. Howard, Milwaukee, Wis., for debtors-in-possession.

Russell Eisenberg, Milwaukee, Wis., for petitioner Richard A. Malone.

Gaar W. Steiner, Milwaukee, Wis., for petitioners.

Donald S. Taitelman, Milwaukee, Wis., for Midland Nat. Bank.

Floyd A. Harris, Milwaukee, Wis., for Trustee Frank C. Verbest.

### DECISION AND ORDER

REYNOLDS, Chief Judge.

These two cases, consolidated in the Bankruptcy Court below and for purposes of appeal in this court, present the question of whether an order of the Bankruptcy Court declaring payments due to appellant Richard A. Malone on certain certificates of indebtedness to be subordinate to certain payments to appellee Midland National Bank should be set aside.

A voluntary petition in bankruptcy was filed August 23, 1972, by Dietz Electric Co., Inc., and Dietz Electrical Manufacturing Corp. (jointly referred to as "Dietz"). These petitions were filed pursuant to Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq. At the time of filing, Midland National Bank ("Midland") possessed a security interest in the inventory, accounts receivable, and contract rights of Dietz to secure advances which Midland had made to the debtor corporations prior to August 23, 1972.

Subsequent to the institution of Chapter XI proceedings, new sources of working capital were required by Dietz to continue operations in view of Midland's collection of accounts receivable under its security interest. Accordingly, Dietz filed a petition in the Bankruptcy Court on August 30, 1972, in which Dietz requested authority to issue certificates of indebtedness in the sum of $100,000 to Midland and $50,000 to appellant Richard A. Malone, president of the debtor-in-possession. These amounts were to represent advances of funds by Midland and Malone to Dietz and were to be secured by a security interest in certain assets of Dietz. The Bankruptcy Court issued the order authorizing issuance of these certificates of indebtedness August 30, 1972. Such certificates expressly provided that the advances to Dietz by Malone would take priority in payment "over existing obligations of the Debtors in the within proceedings, and over all costs and expenses of administration in said proceedings, provided, however, that the Certificates issued pursuant to such Order shall be subordinated in payment to Certificates of Indebtedness issued to Midland National Bank of Milwaukee."

After this August 30, 1972, order, but before September 12, 1972, Malone advanced some $29,049 to Dietz. During

this same time period Midland advanced an undetermined amount to Dietz under the authority granted in the August 30 order. According to the August 30 order, Midland was to be issued certificates of indebtedness by Dietz in the aggregate amount of $100,000. These certificates were to have priority in payment over existing obligations of Dietz, over all costs and expenses of administering the bankruptcy proceeding, and over similar certificates issued to Malone. These certificates to Midland were to be secured by a security interest in all accounts receivable generated after August 23, 1972, and all of Dietz's inventory, machinery, fixtures, and equipment.

Sometime after the August 30 order, Midland discovered "that some $78,000 of receivables which had been generated prior to the Chapter XI proceeding and had been pledged to the bank, had nevertheless been used by Mr. Malone in the operation of the business because he had to, in order to keep the business going." (Findings by the Bankruptcy Court upon evidentiary hearing; December 19, 1973.) Midland thereupon refused to advance the additional $100,000, electing to treat the proceeds that had been utilized like a loan. The bank advanced additional moneys to bring the total to $90,000 and advanced another $50,000 to be secured by specific receivables.

As a result of these events a petition was prepared and an order entered on September 12, 1972, authorizing the issuance of two certificates of indebtedness to Midland, one for $50,000 and one for $90,000. The $50,000 certificate was secured by accounts receivable generated after August 23 (which totaled approximately $102,000), and the $90,000 certificate was secured by an interest in inventory, fixtures, machinery, equipment and work in progress. The certificates of indebtedness issued to both Midland and Malone were given priority "over all costs and expenses of administration in said proceedings."

After the September 12 order was entered, a flood of the premises struck Dietz, causing substantial uninsured damage to much of the asset value securing Midland's $90,000 certificate. Subsequently, the assets of Dietz, including inventory, fixtures, machinery, and equipment, were liquidated for approximately $96,000. On about October 10, 1973, the trustee in bankruptcy of Dietz instituted an action in Bankruptcy Court seeking a distribution of $22,000 from the proceeds of the asset sale to cover administration expenses. Pursuant to an order entered by the Bankruptcy Court on October 10, 1973, this distribution was made. Malone did not receive notice of and did not participate in the proceedings resulting in the $22,000 distribution.

On February 13, 1974, the Bankruptcy Court found as facts that the September 12, 1972, order was not intended to change the priority in payment provisions of the August 30, 1972, order as between certificates of indebtedness issued to Richard A. Malone and Midland; that the $50,000 certificate issued to Midland was secured by approximately $102,000 of accounts receivable of Dietz; and that the $50,000 certificate was paid and the security interest in accounts receivable of Dietz generated subsequent to the filing of the petition was released. The Bankruptcy Court also found that Midland agreed to limit its security interest in accounts receivable to $50,000 to allow Dietz to use additional receivables to attract additional working capital from other banking sources. It was concluded by the Bankruptcy Court that there is still a balance owing on Midland's $90,000 certificate, and that the release of the security interest in the accounts receivable which occurred when Midland was paid on its $50,000 certificate did not vest in Malone a right to be paid on his certificate of indebtedness prior to payment to Midland of the balance owing on its $90,000 certificate. The Bankruptcy Court then found as a

matter of law that the certificates of indebtedness issued to Malone were subordinate in payment to those issued to Midland and entered an order denying the application of Malone for payment on his certificates.

In this appeal, Richard Malone maintains that the bankruptcy judge erred in concluding that the September 12 order did not and was not intended to change the priority of payment as between the $90,000 certificate issued to Midland and the certificates issued to Malone. Malone's position is that he is entitled to be given priority in payment.

On review of the action taken by the Bankruptcy Court in this action, this court is guided by Rule 810 of the Bankruptcy Rules. That Rule provides:

"Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. *The court shall accept the referee's findings of fact unless they are clearly erroneous*, and shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses." (Emphasis added.)

On the record before the court on appeal, which was designated by the appellant and does not include a transcript of the testimony taken at the evidentiary hearing which was the basis for the findings and order giving rise to this appeal,[1] it cannot be said that the bankruptcy judge's findings are clearly erroneous. Therefore, Malone's claim on appeal that he is entitled to priority in accounts receivable over Midland must be denied. Cf. *In Re Runnymede Finance Co., Inc. (Wallace v. Laugharn)*, 64 F.2d 169 (9th Cir. 1933).[2]

It is the position of the appellants that the plain language of the "Application to Issue Certificates of Indebtedness" attached to the order authorizing such issuance supports the correctness of their arguments.[3] As paragraph 2 of

1. Rule 806 of the Bankruptcy Rules imposes the burden on the appellant to designate the contents of the record on appeal. The appellee may then include additional items which it feels must be included. The district court judge is no longer authorized to receive further evidence in connection with a review of the referee's order or findings. Compare Advisory Committee Note to Rule 810 of the Bankruptcy Rules with the former Order 47, General Orders in Bankruptcy.

2. In *Runnymede*, a district court order affirming an order of a referee in bankruptcy was appealed to the Ninth Circuit Court of Appeals. Since the appellate record contained no summary of the evidence upon which the referee based his decision, the Ninth Circuit held that "the findings of the referee were conclusive upon the trial court unless they appear to be wrong on their face." [Citations omitted.] 64 F.2d at 170.

3. The pertinent language of the application states:
"2. Since the execution of said Order, MIDLAND and the Debtors have reviewed the Debtors' financial posture and desire to obtain approval of this Court to modify said Order dated August 30, 1972 only as it affects the issuance of the Certificates of Indebtedness to MIDLAND and the collateral therefor in the following manner:
"a) Debtors will issue to MIDLAND their Certificates of Indebtedness in the sum of $50,000.00, payable in sixty (60) days with interest at the rate of 10% per annum, said Certificates to have priority in payment over existing obligations of said Debtors and over all costs and expenses of administration of said Debtors-in-Possession; and shall be secured by certain accounts receivable of said Debtors, (a schedule thereof to be attached to said Certificates) in the approximate sum of $102,000.00; provided, however, that upon payment to MIDLAND of the $50,000.00 principal, together with interest, the balance of accounts receivable and any proceeds thereof shall be turned over to the Debtors and released from MIDLAND's security interest;
and
"b) MIDLAND has agreed to lend to the Debtors a sum not to exceed $90,000.00 and to accept therefor a Certificate of Indebtedness provided that such Certificate is payable in ninety (90) days, bearing interest at the rate of 10% per annum, have priority in payment over all costs and expenses of administration of said Debtors-in-Possession, and is secured by an interest in Debtors' inventory, fixtures, machinery, equpment [sic] and work in process.
"3. Debtors' Richard A. Malone, as hereinafter noted, has agreed to subordinate the security interest which he may have in those

the application makes clear, the August 30, 1972, order was to be modified "only as it affects the issuance of the Certificates of Indebtedness to MIDLAND and the collateral therefor * * *." The necessary implication from this statement, or at least one logical implication, is that the priority of the Malone certificates as set forth in the August 30 order was not to be affected. Paragraph 7 of the application accompanying the August 30, 1972, order provides, in relevant part, that "said Certificate(s) [certificates of indebtedness issued to Malone] will be subordinated in payment [sic] to any Certificates issued to the Midland National Bank * * *." Although this provision applied only to the certificates issued to Midland pursuant to the August 30 order when it was written, the language in the September 12 application stating that only the Midland certificates were meant to be modified is a sufficient basis for the bankruptcy judge to conclude that the relative priorities of Midland and Malone were not affected.

Appellant also argues that to accept the bankruptcy judge's conclusions would work an illogical result; namely, that Malone made an unsecured advance of nearly $30,000 to Dietz. Accepting the appellant's representation that on September 12, 1972, Dietz's inventory, fixtures, machinery, equipment, and work in progress was worth over $800,000, it appears that there were sufficient assets of Dietz on hand at the time of Malone's advances to secure them. It would be more illogical to assume that Midland, which was to have advanced $100,000 under the August 30 order, would agree to advance $140,000 on September 12, allow Malone to advance some $20,000 less than was originally contemplated on August 30, and

forfeit the priority position it was given in the August 30 order. Malone was the president of Dietz and a substantial shareholder. He would stand to gain a considerable amount from a successful rehabilitation of Dietz and could reasonably have been expected to agree with the arrangements set out in the bankruptcy judge's conclusions.

Appellant, in its brief, has also challenged the order entered by the bankruptcy court on October 10, 1973, which allowed certain expenses of administration to be paid from assets securing Midland's $90,000 certificate. It is not disputed that Malone was not given notice nor opportunity to object to the issuance of the October 10 order in the proceedings below. Moreover, the certificates of indebtedness involved here specifically provide that they have priority " * * * over all costs and expenses of administration in said proceedings * * *." Such an objection is not frivolous and deserves consideration.

Since it does not appear that the bankruptcy judge was given an opportunity to rule on this question in the prior proceedings, it is appropriate, pursuant to Rule 810 of the Bankruptcy Rules, to remand the case to the Bankruptcy Court with leave for Mr. Malone to object to the October 10, 1973, order.

It is therefore ordered that, for the reasons set forth above, the conclusion of the bankruptcy judge that the certificates of indebtedness issued to Richard A. Malone are subordinate in payment to those issued to the Midland National Bank must be and hereby is affirmed.

It is further ordered that this case be and hereby is remanded, pursuant to Rule 810 of the Bankruptcy Rules, to the Bankruptcy Court for consideration of appellant's objection to the Bankruptcy Court's order of October 10, 1973.

___

accounts receivable to be assigned to MIDLAND pursuant to Paragraph 2(a) above; Malone's interest having been obtained in accordance with the provisions of the Order dated August 30, 1972 and Certificates of Indebtedness issued to him pursuant thereto.

"4. The issuance of said Certificates is necessary in order to enable continued uninterrupted operation of the Debtors-in-Possession businesses as no other source of funds at the present time is available for such purpose."